IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

v.                                **CASE NO. 22-po-90050-GEB**

**DAVID P. HILLS,**
    *Defendant.*

**Motion to Dismiss Count 2 as Unconstitutionally Overbroad and Vague**

Pursuant to Federal Rule of Criminal Procedure 12(b), Mr. David Hills, by and through counsel, respectfully requests that the Court dismiss Count 2 of the Information which charges him with disorderly conduct, in violation of K.S.A. 21-6203(a)(3) and 18 U.S.C. § 13. Kansas statute 21-6203(a)(3) is both overbroad and vague, facially and as-applied to Mr. Hills, in violation of the Constitution.

## Background

In August 2022, Mr. Hills was charged with one count of assault, in violation of 18 U.S.C. § 113(a)(5), and one count of disorderly conduct. Specifically, the Information alleged that Mr. Hills "did engage in noisy conduct tending reasonably to arouse alarm, anger, or resentment in others, with knowledge or probable cause to believe that such acts will alarm, anger, or disturb others."[1] The charges arose from an incident on May 20, 2022, on Fort Riley at the home of Mr. Hills' girlfriend's daughter.

---

[1] The Information does not allege that Mr. Hills used fighting words.

1

Kansas statute 21-6203(a)(3) defines disorderly conduct, in part, as "using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others." The statute does not define "noisy conduct," but defines "fighting words" as "words that by their very utterance inflict injury or tend to incite the listener to an immediate breach of the peace."[2]

## Argument

The First Amendment prohibits laws "abridging the freedom of speech."[3] The First Amendment's protections include "the spoken or written word," as well as "conduct [that] possesses sufficient communicative elements."[4] In determining whether particular conduct invokes First Amendment protection, courts ask "whether an intent to convey a particularized message was present, and whether the likelihood was great that the message would be understood by those who viewed it."[5] "Because First Amendment freedoms need breathing space to survive, government

---

[2] K.S.A. 21-6203(c).

[3] U.S. CONST. amend. I. Certain, limited categories of speech are not protected by the First Amendment. The First Amendment, for example, does not protect fighting words. *See Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942). At issue here, however, is the second manner by which the statute can be violated, and which the government is alleging, "noisy conduct."

[4] *Texas v. Johnson*, 491 U.S. 397, 404 (1989).

[5] *Id.* (internal quotations omitted).

2

may regulate in the area only with narrow specificity."[6] Imprecise laws may be attacked on their face pursuant to two doctrines: overbreadth and vagueness.[7]

As argued below, K.S.A. 21-6203(a)(3) is facially unconstitutional because it is both overbroad and vague. In the First Amendment context, when a statute's constitutionality is challenged, the government "bears the burden of establishing its constitutionality[.]"[8] Further, the usual presumption that a statute is constitutional is negated.[9]

## A. Mr. Hills has standing to bring a First Amendment challenge to K.S.A. 21-6203(a)(3).

Facial challenges to statutes under the doctrines of vagueness and overbreadth have long allowed for third-party standing, even if the statute is neither vague, overbroad, nor otherwise invalid as applied to the challenger.[10] If the law is found to be deficient in one of those respects, it may not be applied to him either, "until and unless a satisfactory limiting construction is placed on the statute."[11] Thus, Mr. Hills

---

[6] *N.A.A.C.P. v. Button*, 371 U.S. 415, 433 (1963).

[7] *City of Chicago v. Morales*, 527 U.S. 41 (1999).

[8] *ACORN v. Municipality of Golden*, 744 F.2d 739, 746 (10th Cir. 1984).

[9] *Doe v. City of Albuquerque*, 667 F.3d 1111, 1120 (10th Cir. 2012).

[10] *Sec'y of State of Md. V. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956-57 (1984) ("'Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)); *see also Gooding v. Wilson*, 405 U.S. 518, 521 (1972).

[11] *Wilson*, 405 U.S. at 521. An example of a court limiting the construction of a disorderly conduct statute is found in *State v. Huffman*, 228 Kan. 186 (Kan. 1980). In *Huffman*, the Kansas Supreme Court held the previous version of the disorderly conduct statute, K.S.A. 21-4101, to be overbroad. The court, however, held the statute could withstand a

has standing to challenge K.S.A. 21-6203(a)(3), even if the Court determines the statute is constitutional as applied to him.

**B. Kansas statute 21-6203(a)(3) is facially overbroad.**

A statute is overbroad, in the First Amendment context, if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."[12] To succeed in an overbreadth challenge, the challenger "must show that the potential chilling effect on protected expression is 'both real and substantial,'"[13] and that "substantial overbreadth exists."[14] The first step in an overbreadth analysis "is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."[15] Next, a court determines whether the statute, as construed, criminalizes a substantial amount of protected expressive activity.[16]

Kansas statute 21-6203(a)(3) is substantially overbroad. Although this motion focuses on the second clause in subsection (a)(3), the statute, in its entirety, reads:

---

constitutional challenge when narrowly construed to prohibit speech within the limited category of fighting words. The court determined that "[p]ersons of common intelligence need not guess at the meaning of the words 'alarm, anger or disturb,' when used in conjunction with fighting words." *Huffman*, 228 Kan. at 193; *see also Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1196 (D. Kan. 2018) ("[K.S.A. 21-6203] is construed narrowly, and requires more than words that are merely offensive or anger others.") (internal quotations omitted).

[12] *United States v. Stevens*, 559 U.S. 460, 472 (2010).

[13] *United States v. Brune*, 767 F.3d 1009, 1018 (10th Cir. 2014) (internal citations omitted).

[14] *Id.* at 1020.

[15] *United States v. Williams*, 553 U.S. 285, 293 (2008).

[16] *Id.* at 297.

> Disorderly conduct is one or more of the following acts that the person knows or should know will alarm, anger or disturb others or provoke an assault or other breach of the peace: (1) brawling or fighting; (2) disturbing an assembly, meeting or procession, not unlawful in its character; or (3) using fighting words or engaging in noisy conduct tending reasonably to arouse alarm, anger or resentment in others.[17]

The statute has two scienter requirements—"know" or "should know." The inclusion of a reckless mens rea significantly broadens the reach of this statute. The statute regulates both pure speech and conduct.[18] The statute, however, does not define "noisy conduct," and describing it as "tending reasonably to arouse alarm, anger or resentment in others" does not narrow the scope of this statute. "Noisy" may be defined as: "1. Making noise; 2. Full of or characterized by noise or clamor,"[19] but, in practice, noise is subjective. "Tend" means: "1. To be disposed toward (something); 2. To serve, contribute, or conduce in some degree or way; to have a more or less direct bearing or effect. 3. To be directed or have a tendency to (an end, object, or purpose)."[20] Moreover, there is no restriction on location within the plain language of the statute.[21]

---

[17] K.S.A. 21-6203.

[18] Conduct is defined as "1. Personal behavior, whether by action or inaction, verbal or nonverbal; 2. The manner in which a personal behaves; 3. Collectively, a person's deeds." BLACK'S LAW DICTIONARY (11th ed. 2019).

[19] *Noisy*, MERIAM-WEBSTER ONLINE, https://www.merriam-webster.com/dictionary/noisy.

[20] *Tend*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[21] *See State v. Beck*, 9 Kan. App. 2d 459 (Kan. Ct. App. 1984) ("Disorderly conduct is an offense which may be committed in either a public or private place.").

Kansas statute 21-6203(a)(3) is substantially overbroad because it criminalizes a substantial amount of protected expressive activity. The statute equally criminalizes activity within a private home or a public square. A person who raises her voice while participating in a political debate during Thanksgiving family dinner (in her house or a relative's house) could be equally charged and convicted as a person marching in support of civil rights. A person picketing in protest of a war or police misconduct could be prosecuted for disorderly conduct.[22] Political speech and conduct are tools to arouse anger, alarm, and resentment in others in order to raise awareness for a specific issue or problem. Oftentimes, the specific issues and problems themselves are topics that arouse anger, alarm, and resentment. But the reach of this statute goes beyond political speech. A person expressing sorrow, by singing a religious hymn at a funeral in a cemetery, could be prosecuted under this statute. A person listening to music and singing along in his garden could be prosecuted under this statute. Because the focus is on the impact of conduct on others, the statute's scope is unlimited.

Moreover, the statute prohibits conduct tending to "arouse alarm, anger or resentment in others"; the inclusion of "resentment" means that conduct, such as a rally, song or protest conveying a message that a hearer merely disagrees with could be criminalized. Speech and expressive conduct "may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions

---

[22] It is worth noting, here, that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 461 (1999).

6

as they are, or even stirs people to anger."[23] The only limit on the scope of this statute is how it is enforced by law enforcement, prosecutors, juries, and judges. And, although that may be the case with every law, not every law is as substantially overbroad as the one here. Kansas statute 21-6203(a)(3) is substantially and, thus, facially overbroad.

**C. Kansas statute 21-6203(a)(3) is facially vague.**

Vagueness doctrine grew out of the Due Process Clause of the Fifth Amendment.[24] A vague law "may trap the innocent by not providing fair warning," and "impermissibly delegat[e] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application."[25] When a vague statute "abut(s) upon sensitive areas of basic First Amendment freedoms," it inhibits the exercise of those freedoms.[26] In short, a vague law is one that fails to give a person "of ordinary intelligence a reasonable opportunity to know what is prohibited, so he may act

---

[23] *Cox v. Louisiana*, 379 U.S. 536, 551-52 (1965); *see also Williams*, 553 U.S. at 304 ("It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.").

[24] *Williams*, 553 U.S. at 304.

[25] *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972).

[26] *Id.*

7

accordingly."[27] "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes."[28]

The Kansas disorderly conduct statute is impermissibly vague. A person of ordinary intelligence would not be able to act accordingly because he or she would not know what is prohibited. The statute does not define "noisy conduct" and the rest of the element—"tending reasonably to arouse alarm, anger or resentment in others"—fails to specify. Conduct describes behavior and often includes verbal language. Could a parent be prosecuted for disorderly conduct if they are shouting their child's name in a park if a passerby, angry at the noise, calls the police? Could a woman using a self-defense whistle against an assailant, intending to arouse alarm for her safety, be prosecuted for disorderly conduct? Could a person having a Zoom meeting in their apartment be prosecuted for disorderly conduct if their neighbor is resentful of the noise and calls the police? Could someone honking their horn to alert another driver be prosecuted for disorderly conduct if he should know that honking his horn could arouse alarm in someone walking her dog? Could a raucous game of pick-up basketball result in disorderly conduct charges if spectators become alarmed? Could someone be arrested for disorderly conduct if he dresses up as a zombie and dances down the street while blaring music?[29] Could someone be arrested for disorderly

---

[27] *Id.* at 108.

[28] *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939).

[29] *Baribeau v. City of Minneapolis*, 596 F.3d 465 (8th Cir. 2010) (construing Minnesota's disorderly conduct statute narrowly and determining that plaintiffs were engaged in protected expressive conduct when they dressed up as zombies to protest "mindless

8

conduct simply for singing and practicing ballet in the park?[30] The text of the statute offers no clarification, and an individual is left to guess.

Perhaps the government's response will be that none of the above instances would warrant prosecution for disorderly conduct and that no cop would arrest someone in the above instances. But therein lies the issue, and a second reason that the statute is void for vagueness. "The broad sweep of the ordinance also violates the requirement that a legislature establish minimal guidelines to govern law enforcement."[31] Application and enforcement is left to police, prosecutors, judges, and juries, instead of allowing a citizen the opportunity to "steer between lawful and unlawful conduct."[32] A statute that "necessarily entrusts lawmaking to the moment-to-moment judgment of the policeman on his beat" is impermissibly vague.[33] This becomes more problematic for K.S.A. 21-6203 because there are few state cases which clarify or address the statute's application and limits on expression, particularly purely noisy conduct or nonverbal expression.[34]

---

consumerism," not fighting words, and thus did not fall within the narrowed reading of the statute.).

[30] *Galbreath v. City of Oklahoma City*, 568 F. App'x 534 (10th Cir. 2014).

[31] *City of Chicago v. Morales*, 527 U.S. 41, 60 (1999) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 (1983)). In *Kolender*, the Supreme Court held a California loitering statute that required people to provide a "credible and reliable" identification and to account for their presence to be unconstitutionally vague because it encouraged arbitrary enforcement by failing to describe with sufficient particularity what a person must do to satisfy the statute.

[32] *Grayned*, 408 U.S. at 108.

[33] *Morales*, 527 U.S. 41, 60 (quoting *Kolender*, 461 U.S. at 360).

[34] State cases involving K.S.A. 21-6203(a)(3) (or the previous disorderly conduct statute) address the sufficiency of the evidence to support the disorderly conduct conviction for

Kansas statute 21-6203 is impermissibly vague because a person of common intelligence would not be able to distinguish lawful conduct from unlawful conduct and because the statute lacks governing guidelines, leaving enforcement to the discretion of police and prosecutors on a moment-to-moment basis.

**D. Kansas statute 21-6203 is vague as-applied to Mr. Hills.**

"To satisfy due process, 'a penal statute [must] define the criminal office [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement.'"[35] In an as-applied vagueness challenge, a court must consider the statute in light of the charged conduct.[36]

Mr. Hills is not charged with using fighting words to violate K.S.A. 21-6203(a)(3), nor is he charged with violating another subsection. Although the Information does not specify the alleged "noisy conduct," it seems likely, based on the

---

fighting words and/or noisy conduct. *See State v. Vehige*, No. 116,202, 2017 WL 3203381 at *8 (Kan. App. 2017) (unpublished) (affirming jury verdict and defendant's conviction for disorderly conduct in the absence of a sufficient appellate record); *see also State v. Hughs*, No. 118,281, 2018 WL 2374766, at *2 (Kan. App. 2018) (unpublished) (affirming disorderly conduct conviction of defendant who engaged in fighting and brawling); *State v. Mead*, No. 115,989, 2017 WL 4082240, at *4-5 (Kan. App. 2017) (unpublished) (affirming disorderly conduct conviction stemming from defendant's brawl at motorcycle rally); *City of Paola v. Ammel*, No. 96,301, 2007 WL 2767953, at *3 (Kan. App. 2007) (unpublished) (affirming disorderly conduct conviction where defendant had insulted and fought police officers in a public library); *State v. Heyder*, No. 82,810, 2000 WL 36745844, at *1-2 (Kan. App. 2000) (unpublished) (affirming disorderly conduct conviction arising from defendant's verbal altercation with toll booth operator and highway patrol trooper); *but see State v. Heiskell*, 666 P.2d 207, 211 (Kan. Ct. App. 1983) ("[A]n essential element of disorderly conduct based purely upon a defendant's speech is that the speech constitute 'fighting words.'").

[35] *Kolender*, 461 U.S. at 357.

[36] *See United States v. Franklin-El*, 554 F.3d 903, 910 (10th Cir. 2009).

10

discovery, that the government would argue the "noisy conduct" was a mix of spoken words and nonverbal conduct. The evidence at trial will likely show that the alleged conduct stemmed from Mr. Hills asking to go to the store and asking to leave the Manning residence, where he had been living for several months. The evidence will show that Mr. Hills had consumed alcohol earlier in the day and that he was prevented from leaving the residence, despite attempting to do so. Mr. Hills did not have fair notice that trying to leave a residence and, arguably, expressing frustration when stopped could be considered "noisy conduct" and, thus, he knew or should have known would lead to criminal sanctions under K.S.A. 21-6203(a)(3).

## Conclusion

Kansas statute 21-6203(a)(3) is facially overbroad and vague. Further, K.S.A. 21-6203(a)(3) is vague as-applied to Mr. Hills. Accordingly, Mr. Hills respectfully asks that the Court dismiss Count 2 of the Information.

Respectfully submitted,

s/ Shajiah Jaffri
SHAJIAH JAFFRI, MO #78927
Research & Writing Specialist
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Phone: (913) 551-6712
Fax: (913) 551-6562
Shajiah_Jaffri@fd.org
Attorney for Defendant

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Robin A. Graham
Special Assistant U.S. Attorney
robin.a.graham2.civ@army.mil

Brittany V. Simon
Special Assistant U.S. Attorney
brittany.v.simon.mil@army.mil

                                                 s/ Shajiah Jaffri
                                               SHAJIAH JAFFRI, MO #78927